IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBORAH AMRHEIN, et al.,          *

    Plaintiffs                    *

    v.                            *          CIVIL NO.  SKG-13-1114

REGENCY MANAGEMENT SERVICES,      *
LLC, et al.,
                                  *

    Defendants.                   *

    *    *    *    *    *    *    *    *    *    *    *    *

Now pending is Plaintiffs' motion for collective action status under the Fair Labor Standards Act ("FLSA"). (ECF No. 35). The Court has considered Plaintiffs' motion, Defendants' response in opposition (ECF No. 40) and Plaintiffs' reply thereto (ECF No. 50). No hearing is required. Local Rule 105.6 (D. Md. 2011). The motion is GRANTED.

## I. Procedural Background

On April 14, 2013, Plaintiffs Deborah Amrhein and Oswald Copeland filed a complaint, on behalf of themselves and those similarly situated, against Defendant Regency Management Services, LLC asserting intentional and willful violations of the overtime and minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207. (ECF No. 1). On December 3, 2013, this Court entered Plaintiffs' Amended

1

Complaint, which included a total of nine (9) named Plaintiffs, Deborah Amrhein, Oswald Copeland, Brenda O'Brien, Michaela Lintz, Timothy Mercer, George Haley, Mark Miley, Mark Mazzetta, and Julie Oden, as well as four named defendants, Regency Management Services, LLC ("Regency Management"), Regency Furniture, Inc. ("Regency Furniture"), Regency Furniture of Brandywine, Inc. ("Regency Furniture of Brandywine"), and Abdul Ayyad. (ECF No. 28). Plaintiffs' Amended Complaint also added claims for unpaid wages under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-403, 3-415(a), and the Maryland Wage Payment and Collection Act ("MWPCL"), Md. Code Ann., Lab. & Empl., § 3-505. (Id. at ¶ 105-120).

On December 6, 2013, and December 21, 2013, Defendants sent offers of judgment, pursuant to Fed. R. Civ. P. 68, to all nine named Plaintiffs. (ECF No. 40, 5-8). Five (5) named Plaintiffs, Deborah Amrhein, Oswald Copeland, Brenda O'Brien, Michaela Lintz, and George Haley, have accepted Defendants' Rule 68 offers of judgment. (Id.) Four (4) named Plaintiffs, Mark Mazzetta, Timothy Mercer, Mark Miley, and Julie Oden, have rejected Defendants' Rule 68 offers of judgment. (Id.)

## II. Factual Background

Defendant Regency Management, Abdul Ayyad sole member, owns and operates nineteen furniture stores located throughout

2

Maryland and Virginia. (ECF No. 40-1, Ex. 1, ¶ 3). Defendant Regency Furniture of Brandywine, Abdul Ayyad majority shareholder, owns and operates one retail furniture outlet located in Brandywine, Maryland. (Id., Ex. 1, ¶¶ 4, 6). Regency Management and Regency Furniture of Brandywine each employ furniture sales associates and other staff to support their furniture stores or outlets. (Id., Ex. 1, ¶ 3). Defendant Regency Furniture does not operate any businesses and has no employees. (Id., Ex. 1, ¶ 4). All nine named Plaintiffs were employed as "furniture sales associates" by Defendant Regency Management between May, 2011, and September, 2013. (ECF No. 36, 3; ECF No. 40, 5-6). Additionally, each named Plaintiff worked at one of three Regency Management store locations, either Bel Air, Rosedale, and/or Glen Burnie, Maryland. (ECF No. 40, 5-6).

Upon hiring, Defendant Regency Management required all named Plaintiffs to attend centralized training sessions at one of Regency Management's store locations, not necessarily the location where any particular Plaintiff ultimately worked. (ECF No. 36-2, Ex. B, ¶¶ 9-10; ECF No. 36-3, Ex. C, ¶¶ 9-10; ECF No. 36-4, Ex. D, ¶¶ 9-10). Each attendee received an identical "employee handbook," detailing employer policies and procedures, regardless of which Regency Management location the individual Plaintiff was assigned. (ECF No. 36-1, Ex. A, ¶ 9; ECF No.

3

36-2, Ex. B, ¶ 11; ECF No. 36-3, Ex. C, ¶ 11, ECF No. 36-4, Ex. D, ¶ 11).   This "employee handbook" identified the relevant employers as "Regency Furniture Showrooms," "Ashley Furniture Homestore," and "Marlo."   (ECF No. 36-5, Ex. E).   The handbook also included a welcome letter from Abdul Ayyad, stating "[w]hether you work at Regency Furniture, Ashley Homestore, [or] Marlo Furniture . . . this Employee Handbook has been developed to help you become acquainted with our company and help answer many of your initial questions."   (Id.)   Additionally, Abdul Ayyad regularly visits various of his stores to observe and oversee operations.   (ECF No. 36-1, Ex. A, ¶ 10; ECF No. 36-2, Ex. B, ¶ 15; ECF No. 36-3, Ex. C, ¶ 14; ECF No. 36-4, Ex. D, ¶ 14).   Moreover, Regency Management pools sales associates from multiple locations to a single location if they are needed for special events, such as the Glen Burnie and Bel Air store's grand opening sales.   (ECF No. 36-3, Ex. C, ¶13; ECF No. 36-4, Ex. D, ¶13).

Regency Management sales associates initially earn ten dollars per hour ($10.00/hr) during a training period, except at Regency Management's Easton, Maryland, Woodbridge, Virginia, and Fredricksburg, Virginia, locations, where sales associates earn eight dollars per hour ($8.000/hr) plus a two percent (2%) commission during the training period.   (ECF No. 36-2, Ex. B, ¶ 6; ECF No. 36-3, Ex. C, ¶ 6; ECF No. 36-4 Ex. D, ¶ 6; ECF No.

40, 4). Each Plaintiff earned ten dollars per hour during training. Following completion of the training period, Plaintiffs' salaries were entirely based on sales commissions. (ECF No. 36-1, Ex. A, ¶ 7; ECF No. 36-2, Ex. B, ¶¶ 7-8; ECF No. 36-3, Ex. C, ¶¶ 7-8; ECF No. 36-4, Ex. D, ¶¶ 7-8). However, after Plaintiffs became commission based employees, their pay stubs still indicated the pay rate of ten dollars per hour even if Plaintiffs commissions equaled less than ten dollars per hour for that pay period. (ECF No. 36-1, Ex. A, ¶ 8; ECF No. 36-2, Ex. B, ¶ 8; ECF No. 36-3, Ex. C, ¶ 8; ECF No. 36-4, Ex. D, ¶ 8). Plaintiffs' routinely worked more than forty hours per week, yet, received no overtime pay and for numerous pay periods earned less than ten dollars and eighty eight cents per hour ($10.88/hr) as a result of their commission based salary. (ECF No. 36-1, Ex. A, ¶ 13; ECF No. 36-2, Ex. B, ¶¶ 17-18; ECF No. 36-3, Ex. C, ¶¶ 17-18; ECF No. 36-4, Ex. D, ¶¶ 17-18).

## III. Discussion

### A. Rule 68 Offers of Judgment

Defendants' opposition asserts that this Court should deny Plaintiffs' motion for conditional certification because Defendants offered each named Plaintiff complete relief in the form of Fed. R. Civ. P 68 offers of judgment, effectively mooting the Plaintiffs' claims. (ECF No. 40, 10.) Before,

however, the Court addresses the issue of mootness, the Court shall examine the related – though not dispositive – issue of whether Defendants' offers to have judgment entered against them constitute valid offers of judgment pursuant to Rule 68.   Rule 68 provides, in relevant part:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

> . . .

> (d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation." Simmons v. United Mortgage & Loan, LLC, 634 F.3d 754, 764 (4th Cir. 2011) (quoting Marek v. Chesny, 473 U.S. 1, 5 (1985)).  In order to effectuate that purpose, "an offer of judgment made pursuant to Rule 68 must specify a

definite sum or other relief for which judgment may be entered and must be unconditional." Id. (citing 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 3002, p. 92 (2d ed. 1997)). "[T]he plaintiff must know unequivocally what is being offered in order to be responsible for refusing such offer." Id.

The Fourth Circuit, in Simmons, found that a settlement offer did not constitute a Rule 68 offer of judgment due to four shortcomings. First, the offer only provided the plaintiffs with a five-day window to accept rather than the fourteen-day window required by Rule 68. Id. Second, the offer was not an unconditional offer of judgment on specified terms, rather, the offer required the plaintiffs to submit affidavits stating, among other things, dates on which overtime was worked and the total amount of back pay owed. Id. Third, the defendants did not offer to have judgment entered against them. Id. Fourth, unlike the public nature of an unsealed judgment, the offer required plaintiffs to keep the facts and terms of the settlement confidential. Id.

Here, Defendants made offers that purported to be Rule 68 offers of judgment to all nine named Plaintiffs. All nine offers are identical in the following respects: (1) each offer stipulated that the offer would "remain open for fourteen days after being served, and may be accepted by written notice as set

forth in Federal Rule 68;" (2) each offer was made "for the purpose of offering judgment only;" and (3) each offered "to pay Plaintiff's share of reasonable attorneys' fees and costs to be determined by the Court in accordance with federal principles governing payment of attorneys' fees and costs." (ECF No. 36-9, Ex. I; ECF No. 36-11, Ex. K; ECF No. 36-13, Ex. M; ECF No 40-2, Ex. 2; ECF No. 40-4, Ex. 4; ECF No. 40-6, Ex. 6; ECF No. 40-8, Ex. 8; ECF No. 40-10, Ex. 10; ECF No. 40-12, Ex. 12). Finally, each offer specified a definite sum of monetary relief, based on Defendants' "comprehensive payroll review and analysis." (Id.)(same). Although each Plaintiff was offered a unique and specific sum of money, all nine offers calculated the sum of monetary relief "by multiplying the past due overtime wages [] times two (liquidated damages), and the past due commissions [] times three (treble damages), and then adding these amounts together, plus one dollar." (Id.)(same).

Having considered each of the purported offers of judgment, the Court finds that all nine offers constitute valid offers of judgment pursuant to Rule 68. Each offer specified a definite sum that was unconditional and unequivocal, offered entry of judgment, allowed Plaintiffs 14 days after being served to accept, and provided for costs then accrued. Further, the court notes that the fact that the offers did not specify a sum certain with regard to attorneys' fees does not render the

8

offers "equivocal" or otherwise problematic.  <u>See</u> <u>Simmons</u> 634
F.3d at 766 n.8 (finding that where "the defendants have offered
to pay the plaintiffs their reasonable attorney's fees as
determined by the district court, the plaintiffs have been
offered full relief with regard to attorney's fees under the
FLSA," 29 U.S.C. § 216(b)).

Five named Plaintiffs have accepted Defendants' Rule 68
offers and four named Plaintiffs declined.   Accordingly,
Defendants Rule 68 offers to those named plaintiffs who chose
not to accept are deemed withdrawn.  Fed. R. Civ. P. 68(b).
Further, if the remaining Plaintiffs fail to obtain judgment
that is more favorable than the unaccepted offers, they will be
liable to defendants for costs incurred after the offer was
made, not to include attorney's fees.  <u>Id.</u> at 68(c); <u>Champion</u>
<u>Produce, Inc. v. Ruby Robinson Co., Inc.</u>, 342 F.3d 1016, 1028
(9th Cir. 2003).   Also, if Plaintiffs fail to obtain judgment
that is more favorable than the unaccepted offers, they will not
be entitled to recover attorney's fees incurred after the offer
was made, notwithstanding provisions to the contrary in the
FLSA, MWHL, and MWPCL.  <u>Marek v. Chesny</u>, 473 U.S. 1, 10
(1985)("Civil rights plaintiffs – along with other plaintiffs –
who reject an offer more favorable than what is thereafter
recovered at trial will not recover attorney's fees for services
performed after the offer is rejected.").

The Court now turns to the Defendants' assertion that Plaintiffs' FLSA claims were mooted by Defendants' Rule 68 offers of judgment.  Under Rule 12(b)(1), if Plaintiffs' case is moot, the Court lacks subject-matter jurisdiction and the case must be dismissed.  See DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) ("[t]he inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy'") (internal quotation omitted); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").  A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotation omitted).  A change in the law or a change in factual circumstances can render a case moot, for instance, "when a claimant receives the relief he or she sought to obtain through the claim," his or her case becomes moot.  Id. (quoting Friedman's Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002)).

The Fourth Circuit has held that where an offer of judgment unequivocally offers a plaintiff <u>all</u> of the relief he sought to obtain, in other words complete relief, the offer renders the plaintiff's action moot.  <u>Warren v. Sessoms & Rogers, P.A.</u>, 676 F.3d 365, 370-71 (4th Cir. 2012).  Even an offer of judgment that fails to satisfy the formalities of Rule 68 can still moot a plaintiff's action, because the doctrine of mootness is constitutional in nature.  <u>Simmons</u>, 634 F.3d at 764. Accordingly, where a defendant has offered a plaintiff the full amount of damages to which he claimed individually to be entitled, there is no longer any "case or controversy," <u>Id.</u> (quoting <u>Zimmerman v. Bell</u>, 800 F.2d 386, 390 (4th Cir. 1986)). Indeed, the case becomes moot, not because the plaintiff actually obtained the full amount of damages, but rather, because the plaintiff "<u>could have obtained</u> through acceptance of the offer all that he could have hoped to obtain through litigation." <u>Mould v. NJG Food Services, Inc.</u>, No. JKB-13-1305, 2013 WL 6331286, at *12 (D. Md. Dec. 4, 2013) (quoting <u>Bradford v. HSBC Mortg. Corp.</u>, 280 F.R.D. 257, 263 (E.D. Va. 2012)).

The mootness doctrine applies in the context of FLSA collective actions.  The Supreme Court recently addressed the issue of whether an FLSA collective action could be maintained if the lone plaintiff's individual claims were mooted. <u>Genesis Healthcare Corp. v. Symczyk</u>, 133 S.Ct. 1523, 1529 (2013)(holding

that "[i]n the absence of any claimant's opting in, [the individual plaintiff's] suit became moot when her individual claim became moot, because she lacked any personal interest in representing the others in this action"). Thus, "if an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation, that action can no longer proceed and must be dismissed as moot." Id. at 1528 (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)).

Application of the mootness doctrine in the context of collective actions prior to class certification, however, is unsettled. Four circuits have held that an offer of complete relief does not moot a putative class action as long as the plaintiff moves for class certification within a reasonable time after completion of discovery. See Mould, 2013 WL 6331286 at *13 (citing Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC, No. 11-cv-02467, 2013 WL 5476979, at *5 (D. Md. Oct. 2, 2013)). The Seventh Circuit, however, has held that a complete settlement offer made before a plaintiff moves for class certification moots the plaintiff's putative class action. Damasco v. Clearwire, Corp., 662 F.3d 891, 895-96 (7th Cir. 2011). This Court is not aware of any Fourth Circuit ruling on this issue. However, the present motion does not require the Court to reach this issue.

12

The question of mootness turns on whether Defendants' offers offered to Plaintiffs all that they could have hoped to obtain, or in other words, offered complete relief.  The four remaining named Plaintiffs, Mark Mazzetta, Julie Oden, Mark Miley, and Timothy Mercer, each allege a right to relief pursuant to the FLSA, the MWHL, and the MWPCL.  The Court, therefore, will consider the remedies available to these Plaintiffs pursuant to these causes of action.

The Fourth Circuit, in Warren, considered whether an offer of judgment mooted a plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim.  676 F.3d at 370.  At issue was whether the plaintiff could possibly recover more than the $250 award for actual damages proposed by the defendants' Rule 68 offer.  Id. at 371-72.  The court remarked that the FDCPA contains no statutory cap on a plaintiff's actual damages and that the plaintiff in that case sought an unspecified award of actual damages.  Id. at 371.  Ultimately, the Court found that the defendants' offer of judgment did not moot the plaintiff's case because at such an early "stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court," the Court "simply cannot hold that [plaintiff] could not possibly recover more than $250 if her case proceeded to a jury trial."  Id. at 372.  If, for example, the plaintiff "made a specific demand in the amended complaint for actual damages and

the defendants offered that amount or more" or the plaintiff "quantified her alleged damages in response to a discovery request and the defendants offered that amount," the defendants offer would have mooted the plaintiff's case.  Id.

Here, as in Warren, Plaintiffs' amended complaint does not make a specific demand for actual damages.  The Court, therefore, will consider the scope of Plaintiff's possible recovery under the FLSA, MWHL, and MWPLC.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Here, Plaintiffs allege "willful violation," which would entitle them to a three-year statute of limitations period, if proven.  Id. § 255(a); (ECF No. 19-1, ¶¶ 101-04).  If Plaintiffs cannot prove "willful violation," they would only be entitled to a two-year statute of limitations period.  Id.  Additionally, the court notes that prejudgment interest is not within the scope of Plaintiffs' recovery.  See Hamilton v. 1st Source Bank, 895 F.2d 159, 166 (4th Cir. 1990)(noting that "liquidated damages were provided in lieu of calculating the cost of delay – which is the function of prejudgment interest – and therefore [] a claimant could not

14

recover both prejudgment interest and liquidated damages.") Moreover, postjudgment interest should not be considered within the scope of recovery for purposes of a mootness analysis. <u>See</u> <u>Mould</u>, 2013 WL 6331286 at *15 (observing that, while FLSA jurisprudence does not prohibit awarding postjudgment interest, a defendant could easily avoid such interest through prompt payment when judgment is entered).

Next, the MWHL provides that "if an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle" and "the court may allow against the employer reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl., §§ 3-427(a),(d).  Plaintiffs, however, can only obtain a single recovery for damages resulting from Defendants' failure to pay wages as required by law, even upon a successful showing of liability under both the FLSA and MWHL. <u>Mould</u>, 2013 WL 6331286 at *15; <u>U.S. v. Rachel</u>, 289 F.Supp.2d 688, 697 (D. Md. 2003) (noting that "the one wrong, one recovery rule precludes a party from double recovery for a single injury") (internal citations omitted).

Finally, the MWPLC provides for treble damages for an employer's failure to "pay an employee or the authorized representative of an employee all wages due for work that the

employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl., §§ 3-505(a), 3-507.2. Claims brought pursuant to the MWPCL, unlike the MWHL, are limited to actions challenging the timing or mechanisms of wage payment, not actions where the core dispute is establishing entitlement to unpaid minimum wages or overtime wages. See McLaughlin v. Murphy, 372 F.Supp.2d 465, 474-75 (D. Md. 2004) (discussing the distinction between the MWHL and the MWPCL). However, claimants may maintain MWPCL claims alongside FLSA and MWHL claims where the MWPCL claims are expressly limited to wages withheld upon termination. See Butler v. directsat USA, LLC, 800 F.Supp.2d 662, 669-71 (D. Md. 2011); Hoffman v. First Student, Inc., No. AMD-06-1182, 2009 WL 1785356, at *9-10 (D. Md. June 23, 2009); Reed v. Code 3 Security and Protection Services, Inc., No. AW-09-1162, 2009 WL 5177283, at * (D. Md. Dec. 18, 2009).

Thus, the scope of Plaintiffs' possible recovery consists of (1) unpaid wages plus damages equal in amount to the unpaid wages (liquidated damages), both being subject to a three-year statute of limitations at most; (2) Plaintiffs' reasonable attorney's fees and costs; and (3) Plaintiffs' wages withheld upon termination times three (treble damages).

Having considered Defendants' Rule 68 offers of judgment, the Court concludes that, as was the case in Warren, the Rule 68 offers do not moot any of the remaining named Plaintiffs' claims. Plaintiffs' amended complaint does not make a specific demand for actual damages as to any of the named Plaintiffs' FLSA, MWHL, or MWPCL claims. Additionally, none of the remaining named Plaintiffs, Mark Miley, Julie Oden, Mark Mazzetta, or Timothy Mercer, have quantified their alleged damages in response to a formal discovery request. In fact, all of Defendants' Rule 68 offers were accompanied by identical sets of interrogatories, which sought, among other things, information pertaining to each Plaintiff's damage calculations, overdue commissions, and pay periods in which overtime and regular time wages are owed. (ECF No. 50, 5-6; Id., Ex. 1, 6-7; Id., Ex. 2, 6-7).

Defendants' opposition relies on Simmons to argue that this Court should find that the Plaintiffs' claims were mooted by Defendants Rule 68 offers (ECF No. 40, 12-15). The Fourth Circuit's decision in Simmons, however, is of no support to Defendants. As discussed supra, the Fourth Circuit in Simmons found four defects in the defendants' purported Rule 68 offers, but, went on to explain that "the doctrine of mootness is constitutional in nature, and therefore, [is] not constrained by the formalities of Rule 68." 634 F.3d at 764. The Court,

however, declined to moot the plaintiffs' claims because at the time the defendants made their offers of judgment, "the parties had yet to agree upon the scope of the plaintiffs' alleged damages under the FLSA," i.e., "the parties still had work to do in order to figure out what amounts the plaintiffs were allegedly owed under the FLSA." Id. at 765.   Here, as in Simmons, the parties have yet to agree upon the scope of the Plaintiffs' alleged damages under the FLSA, MWHL, and MWPCL. Defendants' Rule 68 offers calculated damages based on Defendants' own unilateral "comprehensive payroll review and analysis."   Moreover, Defendants have not provided evidence supporting the factual basis or methodology used in calculating the amount of damages owed to each Plaintiff.   This form of unilateral damage calculation is not the sort that allows a court to determine that a claimant is offered all he or she could have hoped to obtain through litigation.   See, e.g., Mould, 2013 WL 6331286, at *16-18 (finding three Rule 68 offers, each calculated by an independent CPA using payroll records provided by the defendants and supported by the affidavit of the CPA, did not moot the plaintiffs' FLSA and MWHL claims because, absent a specific demand or quantified damage calculation in response to a discovery request, the court could not be certain that the plaintiffs could not possibly recover more than offered).

18

Consequently, at this stage in the proceedings, particularly before any formal discovery has taken place or the parties have agreed upon the scope of Plaintiffs' alleged damages, the Court simply cannot hold that the remaining named Plaintiffs could not possibly recover more than Defendants' Rule 68 offers. This Court, therefore, finds that the remaining named Plaintiffs' claims are not moot. The Court shall proceed to consider Plaintiffs' motion for conditional certification.

## B. Conditional Certification

The Court now addresses Plaintiffs' motion for conditional certification pursuant to the FLSA, 29 U.S.C. § 216(b). That provision states that:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id. Section 216(b) established an "opt-in" scheme whereby no claimant shall be a member of or bound by the action unless he or she affirmatively "opts-in." Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp.2d 762, 771 (D. Md. 2008); Yeibyo v. E-Park of DC, Inc., No. DKC-07-1919, 2008 WL 182502, at *6 (D. Md. Jan. 18, 2008). It is well settled that district courts have

discretion to allow such claims to proceed as collective actions and to facilitate notice to potential plaintiffs. The relevant inquiry, therefore, is whether the case at hand is an appropriate case in which to exercise such discretion. See Id. (citing Camper v. Home Quality Management, Inc., 200 F.R.D. 516, 159 (D. Md. 2000)).

Courts determine whether collective treatment is warranted in two stages. Robinson v. Empire Equity Group, Inc., WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009). The first stage, conditional certification, the stage which is relevant to the present motion, requires plaintiffs to make a "preliminary factual showing," typically by pleadings and affidavits, "that a similarly situated group of potential plaintiffs exists." Id.; Yeibyo, 2008 WL 182505, at *7. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Yeibyo, 2008 WL 182505, at *7 (citations omitted). The mere allegations of the complaint, however, will not suffice to meet the plaintiffs' modest factual burden. Quinteros, 532 F. Supp.2d at 772 (citing Camper, 200 F.R.D. at 519).

A group of potential plaintiffs are "similarly situated" when "they together were victims of a common policy or scheme or plan that violated the law." Id. (citations omitted). Put

another way, plaintiffs are similarly situated when they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from . . . similar . . . job requirements and pay provisions." Robinson, 2009 WL 4018560, at *2 (quoting Yeibyo, 2008 WL 182502, at *7). Class members need not be identical, only similar. Id. At the conditional certification stage, the court does not conclusively determine whether a class of similarly situated plaintiffs exists, rather, the court merely determines whether plaintiffs have made the "modest factual showing" of a similar situation sufficient to justify notifying other potential plaintiffs of the action. Id.

Here, Plaintiffs contend that "[t]he collective action should include all current and former employees of the Defendants who were or are employed in all of Defendants' furniture stores located in Maryland, Virginia, and D.C. from April 15, 2010 to present." (ECF No. 36, 13).

Plaintiffs have put forth evidence, in the form of documents and affidavits, suggesting violations of the FLSA overtime and minimum wage provisions: in particular, that Plaintiffs' commission based salaries routinely result in pay below minimum wage and that Plaintiffs' frequently worked in excess of forty hours per week without receiving overtime pay. Additionally, Plaintiffs' evidence indicates that Defendants,

although managing numerous stores and operating under multiple trade names, manage all furniture sales locations as a single "company." This includes providing centralized training and employee handbooks, centralized oversight by Abdul Ayyad, as well as moving sales associates between stores when necessary, for example, at new location grand opening sales events. Defendants cite D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995), asserting that Plaintiffs have merely made "broad and vague" class-wide allegations of discrimination, and therefore, have not sufficiently presented a factual showing that potential plaintiffs are similarly situated. (ECF No. 40, 18). The Court, however, finds that D'Anna is distinguishable from the present case. In D'Anna, a case brought pursuant to the Age Discrimination in Employment Act ("ADEA"), the plaintiff sought conditional certification of a collective action, yet, did nothing more than identify eleven individuals over the age of forty who may have been terminated during the company vice president's tenure. D'Anna, 903 F. Supp. at 894. The court in D'Anna found that the "mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are 'similarly situated.'" Id. Here, conversely, as discussed supra, Plaintiffs have shown more than the "mere listing of names."

The Court does, however, find that Plaintiffs' proposed class should be limited to "all current and former commissioned furniture sales associates," rather than "all current and former employees." All nine named Plaintiffs were "sales associates" and all of the evidence offered by Plaintiffs pertains to the hiring, training, duties, and payment scheme of sales associates. Plaintiffs have raised no evidence regarding the duties or payment structure of non-sales staff employed by any named Defendants. Defendants also assert that if Plaintiffs are granted conditional certification, the class should not include any "current" employees nor any employees outside of Maryland, because all named Plaintiffs are located in Maryland and Plaintiffs have not submitted any evidence concerning current employees of Defendants. (ECF No. 40, 16, 23). However, considering Plaintiffs' minimal factual burden at the conditional certification stage, the Court finds that Defendants' current sales associates, in both Maryland, Virginia and the District of Columbia,[1] are similarly situated with regard to FLSA minimum wage and overtime claims. Plaintiffs have offered evidence of a company-wide commission based payment

---

[1] Although Plaintiffs' motion suggests that Defendants' maintain stores in Maryland, Virginia, and Washington D.C., evidence indicates that Defendants' only maintain store locations in Maryland and Virginia. (ECF NO. 40, Ex. 1, ¶¶ 3-4). Defendants are silent on this point. Accordingly, if Defendants maintain or have maintained store locations in the District of Columbia during the relevant time period, names of employees at these stores should be provided.

structure and no evidence suggests that only Maryland based sales associates or only former sales associates were employed under that scheme. Moreover, Maryland and Virginia constitute a relatively small geographical area which could easily be managed under a uniform payment scheme by Defendants Regency Management and Abdul Ayyad.

Having considered Plaintiffs' motion for conditional certification, because the potential class members, "current and former commissioned furniture sales associates," have similar wage and overtime claims, job duties, and pay, this Court finds that they are similarly situated for purposes of conditional certification.

Finally, the Court acknowledges Defendants' challenges to conditional certification on the bases of (1) Plaintiffs' unequal entitlement to damages and (2) that any potential opt-in plaintiffs are subject to valid and binding arbitration agreements. (ECF No. 40, 20-22). First, Plaintiffs' potential for unequal entitlement to damages does not prevent conditional certification. "Plaintiffs do not have to show that the potential class members have identical positions for conditional certification; plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay." Robinson, 2009 WL 4018560, at *3 (internal quotations omitted) (emphasis added); see also Yeibyo, 2008 WL 182502, at *7

24

("similarly situated" requires persons have similar job requirements and pay provisions, "the positions need not be identical, only similar"). Second, the Court finds that the potential opt-in plaintiffs' potential duty to arbitrate does not prevent conditional certification. Defendants' arbitration agreements state that "except for exclusively monetary claims of less than $5,000," any dispute or controversy shall be submitted to and determined by binding arbitration under the Federal Arbitration Act ("FAA"). (ECF No. 40-14, Ex. 14). Yet, Defendants have not filed any motion to compel arbitration nor have they identified any potential opt-in plaintiffs whose claims would be subject to valid and binding arbitration. See Nesselrodte v. Underground Casino & Lounge, LLC, No. JES-11-092, 2012 WL 4378163, at *4 (N.D. W.Va. Sept. 25, 2012)(granting conditional certification where the defendants had not yet filed any motion to compel arbitration). Moreover, even if the court were to address the merits of Defendants' arbitration agreement, the "sample agreement" submitted by Defendants only mandates arbitration of claims in excess of five thousand dollars ($5,000). (ECF No. 40, Ex. 14). Defendants' own Rule 68 offers of judgment to Plaintiffs Julie Oden and Mark Miley, for example, offered only $2,395.10 and $2,898.79, respectively. (ECF No. 40-8, Ex. 8; ECF No. 40-10, Ex. 10). Accordingly, this Court cannot determine at this stage of the proceeding what

potential opt-in plaintiffs, if any, would be subject to valid and binding arbitration.  Thus, the potential for arbitration will not forestall the Plaintiffs' entitlement to conditional certification.

## C. Notice Method

Plaintiffs request that this Court order Defendants "to produce to Plaintiffs, within fourteen (14) days of the date of this Court's Order, a list of all current and former commissioned furniture sales associates employed by Defendants at any of Defendants' furniture stores located in Maryland, Virginia, or D.C., at any time since April 15, 2010, including the employees' full name, last known residential address, last known work address, last known phone number(s), and last known e-mail address."  (ECF No. 35, 2).  Defendants contest Plaintiffs' request, asserting that the request over-reaches with regard to potential opt-in plaintiffs' last known telephone numbers and email addresses.  (ECF No. 40, 24).  The Court agrees, as to telephone numbers.  Courts in this district hold that absent a showing by plaintiffs of a "special need" for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.  See Calderon v. Geico General Ins., No. RWT-10-1958, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011); Arevalo v. D.J.'s Underground, Inc., No.

DKC-09-3199, 2010 WL 4026112, at *2 (D. Md. Oct. 12, 2010).
Because email is not "interactive," as is a telephone call, and
that the plaintiffs' counsel's use of the email addresses shall
be regulated, the Court shall require production of email
addresses.   Here, however, Plaintiffs have made no showing
whatsoever of a "special need" for potential opt-in plaintiffs'
telephone numbers.   As such, the Court finds that Defendants
need not produce that information to Plaintiffs, at this time.
However, as suggested in Arevalo, Plaintiffs' counsel may be
able to demonstrate the ineffectiveness of notice by mail and
email, and if so, this Court will consider production of
telephone numbers.   But given the greater intrusion that a
telephone call entails and the open-ended nature of the
resultant communication, initial production of information of
putative class members shall be limited to postal addresses and
email addresses.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs motion for
conditional certification of an FLSA collective action is
GRANTED. A separate order shall issue.


Date: March 20, 2014                 _____/s/_____
                                     Susan K. Gauvey
                                     United States Magistrate Judge